Dr. F. R. ERENFELD, d/b/a Erenfeld Clinic, Appellant,

v.

Fred R. ERENFELD, Executor of the Estate of Louis G. Texlee, Deceased, Respondent.

Civ. No. 8724.

Supreme Court of North Dakota.

March 29, 1972.

Rehearing Denied May 1, 1972.

Farhart & Rasmuson, Minot, for appellant.

Funke & Eaton, Minot, for respondent.

PAULSON, Judge (on reassignment).

This is an appeal from a judgment of the District Court of Ward County which affirmed an order of the County Court of Ward County. The order of the county court disallowed $12,779.40 of a claim for $19,040.40 made by Dr. F. R. Erenfeld, doing business as Erenfeld Clinic [hereinafter Clinic], against the estate of Louis G. Texlee, deceased.

Mr. Texlee died testate on November 21, 1969. Mr. Texlee bequeathed all of his estate equally to St. Joseph's Hospital and to Trinity Hospital of Minot, after payment of his debts and funeral expenses. His will named Dr. Fred R. Erenfeld as executor of his estate. Neither of the hospitals was represented at the proceedings in the lower courts, but they were made parties and have appeared on the appeal to this court.

The Clinic filed its claim against the estate in the amount of $19,040.40, pursuant to § 30–18–06 of the North Dakota Century Code. On May 25, 1970, a hearing was held before the Ward County Court with reference to this claim. At the hearing Dr. Erenfeld testified: that he had treated Mr. Texlee periodically since 1941; that he had been a friend of Mr. Texlee; that Mr. Texlee had an open account with the Clinic and had made occasional payments over the years; that the services that he had performed for Mr. Texlee were not gratuitous; and that Mr. Texlee had been critically ill over a period of many years and was 89 years old at the time of his death.

Miss Amy Petersen, the receptionist and bookkeeper for the Clinic, also testified at the hearing. Miss Petersen testified: that she had been employed by the Clinic since 1943; that she recorded the charges and payments made on Mr. Texlee's account; that, prior to December 4, 1958, the Clinic had utilized a ledger book system of accounting; that in 1958 the Clinic converted to an account card system of accounting, and that the balance carried forward from the old bookkeeping system was the first entry in the new account card system; that she sent Mr. Texlee copies each month of his account card which showed the balance due; and that the ledger book record of accounts used by the Clinic prior to 1958 had been destroyed by the 1969 Minot flood.

Copies of the account cards maintained for Mr. Texlee's account were introduced at the hearing. These cards reveal that the balance carried forward from the old ledger book system was $12,779.40; that Mr. Texlee made ten payments during the period between December 1958 and November 21, 1969, the date of his death; and that the balance due and owing to the Clinic at the time of his death was $19,040.40.

The county court disallowed that portion of the claim which related to services rendered to Mr. Texlee prior to December 4, 1958, and the district court affirmed the order of the county court. The issue on appeal is the determination of the amount to be allowed as a claim against the estate of Louis G. Texlee, deceased.

The North Dakota statutes applicable to this case are §§ 28-01-16, 28-01-36, and 30-18-09, N.D.C.C., which provide:

28-01-16, N.D.C.C. "Actions having six years limitations.—The following actions must be commenced within six years after the cause of action has accrued:

"1. An action upon a contract, obligation, or liability, express or implied, subject to the provisions of sections 28-01-15 and 41-02-104;

. . . ."

28-01-36, N.D.C.C. "New promise must be in writing in order to extend limitation—Effect of any payment.—No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, but this section shall not alter the effect of any payment of principal or interest."

30-18-09, N.D.C.C. "Debts of decedent—Barred claims disallowed.—No claim barred by the statute of limitations at the time of the death of the deceased shall be allowed by the court, either in favor of or against the estate, as a set-off or otherwise. No claim which has been presented against an estate is affected by the statute of limitations pending the proceedings for the settlement of the estate. The running of the statute of limitations shall be suspended following the death of the decedent until a creditor is authorized to apply for letters of administration, but if letters testamentary or letters of administration are not applied for within such period, the statute thereafter shall continue to run until a petition is filed."

■ The first question for the court to consider is the type of account which is involved in this case. In Hansen v. Fettig, 179 N.W.2d 739, 741 (N.D.1970), at paragraph 2 of the syllabus, this court stated:

"An account consisting only of charges on one side and payments on the other is not a mutual account."

Since the account in the case at bar consisted only of charges on one side and payments on the other, we find that this is not a mutual account.

■ Our interpretation of § 28-01-36, N.D.C.C., in Hansen v. Fettig, *supra,* leads us to the conclusion that this is not an account stated, since there was no written acknowledgment of or promise to pay the debt.

■ Having determined that this is not a mutual account or an account stated, we accordingly conclude that this is a simple open account. On a simple open account the statute of limitations runs from the date of each item. 1 Am.Jur.2d, Accounts and Accounting § 15, p. 387. It is clear then that the six-year statute of limitations commenced to run from the date that Dr. Erenfeld performed each particular service for Mr. Texlee. Unless some event occurred which tolled the statute of limitations, the only services for which Dr. Erenfeld can collect are those services which were performed within the six years

prior to November 21, 1969, the date of Mr. Texlee's death. § 30–18–09, N.D.C.C. We next must consider whether any event occurred which tolled the statute of limitations.

A review of the record reveals that there is no evidence of an acknowledgment or promise in writing which would create an account stated. However, Dr. Erenfeld argues that part payment on a simple open account in itself tolls the statute of limitations. Dr. Erenfeld's argument is untenable in view of our decision in Hansen v. Fettig, *supra*, which holds that part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations. The decision in the case of Roles v. Roles, 58 N. D. 310, 225 N.W. 809 (1929), is distinguished from the case at bar because the *Roles* case concerned a part payment on a promissory note.

Dr. Erenfeld contends that the law applicable to regular merchant accounts should not be applied to doctors' accounts, and he cites two cases in support thereof: Lowenstein v. Widdicomb, 52 S.W.2d 1044 (Mo. App.1932), and Hazlip v. Leggett, 14 Miss. (6 Smedes & M) 326 (1846). These cases do not represent a majority view, as a perusal of the Annotation at 99 A.L.R.2d 251 reveals. This court has applied the general statute of limitations to an attorney's account [Burke v. Welo, 49 N.D. 119, 190 N.W. 269 (1922)], and we are of the opinion that the general statute of limitations should also apply to a doctor's account.

Dr. Erenfeld contends that the lower courts should have accepted the balance carried forward from his old ledger book accounting system as satisfactory proof of actual services rendered. The findings of the lower courts that there was not sufficient proof of services rendered prior to 1958 must be afforded appreciable weight and in any event these charges are barred by the six-year statute of limitations.

Since the county court and the district court did not apply the law in the manner set forth in this opinion, this court will compute the amount which should be allowed on Dr. Erenfeld's claim. The evidence shows that the balance due on the account six years prior to Mr. Texlee's death was $15,372.90. Subtracting this figure from the final balance of $19,040.40 of Dr. Erenfeld's account with Texlee produces a figure of $3,667.50. However, Mr. Texlee made payments totaling $601.50 during the last six years of his life and, under our decision in Hansen v. Fettig, *supra*, interpreting § 9–12–07, N.D.C.C., Dr. Erenfeld was entitled to apply these payments against the earlier items of the account since Mr. Texlee did not direct how the payments should be applied. Accordingly, the $601.50 should be added to the $3,667.50 figure to arrive at an aggregate figure of $4,269.00, which is the amount which should have been allowed to the Clinic against the Texlee estate.

The judgment as modified is affirmed.

STRUTZ, C. J., and ERICKSTAD, J., concur.

TEIGEN, Judge (dissenting).

I dissent. I find that I must take issue with that portion of ¶ 5 of the syllabus of the majority opinion, which states:

"Part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations."

That portion of the paragraph of the syllabus is based on the following statement contained in the body of the opinion:

"A review of the record reveals that there is no evidence of an acknowledgment or promise in writing which would create an account stated. However, Dr. Erenfeld argues that part payment on a simple open account *in itself* tolls the statute of limitations. Dr. Erenfeld's argument is untenable in view of our deci-

sion in Hansen v. Fettig, *supra* [179 N. W.2d 739], which holds that part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations."

The problem with this paragraph of the syllabus and the statement on which it is based is that Hansen v. Fettig, *supra*, does not hold that "part payment on a simple open account without a written acknowledgment or promise does not toll the statute of limitations."

Hansen v. Fettig, *supra*, holds that an account consisting only of charges on one side and payments on the other is not a mutual account. With this I agree. Secondly, it holds that an account stated, under Section 28–01–36, N.D.C.C., requires that the statement be in writing, signed by the party to be charged thereby. With this I also agree. It then finds that the account in that case was neither mutual nor stated. With this I agree also.

Hansen v. Fettig, *supra*, does not consider part payments on a simple open account or the effect of part payment on the operation of the statute of limitations. It was not necessary to consider this principle because the author of that opinion found another avenue to pursue. In Hansen v. Fettig, *supra*, the creditor testified that he applied the payments to the oldest charges and we found that the debtor had failed to exercise his prerogative to direct otherwise at the time the payments were made. Therefore, the creditor's act of applying the debtor's payments to the oldest charges left the unpaid balance current.

There is no evidence and no claim is made in this case by Dr. Erenfeld that he applied the credits for the payments made by Mr. Texlee upon the oldest charges. In fact, the account in evidence indicates that the credits were applied to the balance of the whole account as of the time each of the respective payments were made.

The majority have not pointed out wherein Hansen v. Fettig, *supra*, holds that part payment on a simple open account, without a written acknowledgment or promise, does not toll the statute of limitations. However, if I permit myself to speculate, I assume that this conclusion is based on that portion of the opinion deciding the effect or applicability of Section 28–01–36, N.D.C.C., to the case, and the finding that the account was not an account stated. However, reading that portion of the opinion also leaves me in doubt because no reference whatever is made to part payments save the exception contained in the statute itself, which is quoted. The portions of the A.L.R. note which are quoted and relied upon as a basis for construction of the statute in no way suggest that part payment does not toll the statute of limitations where a simple open account is involved. The writer of the annotation, in footnote 18, 51 A.L.R.2d 331, 365, sets forth examples of statutes which he has considered and which are comparable to Lord Tenterden's Act, to which he refers. These statutes are from the states of Arkansas, California, Massachusetts, Minnesota and Utah. A reading of these statutes immediately discloses that they are different from our statute (Section 28–01–36, N.D.C.C.) in that they do not contain the exception: "this section shall not alter the effect of any payment of principal or interest." Part V of the annotation relied upon in Hansen v. Fettig, *supra*, covers "part payment". This part of the annotation acknowledges that part payment of a debt will take it out of the operation of the statute of limitations. It then considers the effect of part payment on Lord Tenterden type statutes and concedes that, generally, part payment of a debt may affect the running of limitations against it. It cites the reader to American Jurisprudence, Limitation of Actions. This portion of the annotation is not quoted nor referred to in Hansen v. Fettig, *supra*.

It is clear to me that the scope of the annotation entitled "Limitations Statute—Account Stated" as contained in 51 A.L.R.2d, commencing at page 331, on which the au-

thor of Hansen v. Fettig, *supra*, has relied, was not intended to cover part payment except as part payment may affect the application of limitations to an account stated, which is the subject matter of the annotation. Here, and in Hansen v. Fettig, *supra*, we do not have an account stated and therefore the annotation is not applicable to the question of whether part payment of a simple open account tolls the statute of limitations.

Lord Tenterden's Act (9 Geo. IV, c. 14, § 1) required that where an acknowledgment was relied upon to take a case out of the statute, the acknowledgment should be in writing, signed by the person to be charged thereby. The Act did not deal with the effect of a part payment, nor define by whom it might be made, nor whom should be bound thereby. It appears that Lord Tenterden's Act left these matters to be regulated by the courts. Footnote 14, 51 Am.Jur.2d, Limitation of Actions, § 360.

The North Dakota statute requiring that a new promise must be in writing in order to extend the limitation period expressly excepts payments from its operation. The statute provides:

"No acknowledgment or promise is sufficient evidence of a new or continuing contract, whereby to take the case out of the operation of this chapter, unless the same is contained in some writing signed by the party to be charged thereby, *but this section shall not alter the effect of any payment of principal or interest.*" [Emphasis added.] Section 28–01–36, N. D.C.C.

Thus payment without a written acknowledgment or promise is regarded as the equivalent of a new promise in writing. 51 Am.Jur.2d, Limitation of Actions, § 361.

Our court has recognized the principle that the statute of limitations is tolled as to the obligor in the event of payment upon the debt without a written acknowledgment or promise in a number of cases. Magnuson v. Breher, 69 N.D. 197, 284 N.W.

853 (1939); Langlie v. Loge, 59 N.D. 399, 230 N.W. 211, 71 A.L.R. 373 (1930); Roles v. Roles, 58 N.D. 310, 225 N.W. 809 (1929); Hansen v. Branner, 52 N.D. 892, 204 N.W. 856, 41 A.L.R. 814 (1925); Omlie v. O'Toole, 16 N.D. 126, 112 N.W. 677 (1907).

Thus we have judicially acknowledged and adopted the well-established principle that a part payment of a debt may, under proper circumstances, constitute such an acknowledgment of a larger debt that will raise an implication of a new promise to pay the balance and set the statute of limitations running anew. This is the general, if not the universal, rule. 51 Am.Jur.2d, Limitation of Actions, §§ 360 through 390; 54 C.J.S. Limitations of Actions §§ 321 through 339; 36 A.L.R. 346. Our legislature acknowledged this principle by adopting the exception in Section 28–01–36, N. D.C.C., quoted above. The majority have, in my opinion, erroneously construed this statute by failing to recognize the exception.

It is clear from the citations heretofore given that a part payment, to be effectual to toll the running of the statute of limitations, must be voluntary, free from uncertainty as to identity of the debt, and must be made and accepted as a payment of a part of a larger debt, under circumstances consistent with intent to pay the balance. The burden is upon the creditor to show these requisites. 51 Am.Jur.2d, Limitation of Actions, § 369.

In addition to the facts set forth by the majority, the record establishes that the only account owed by Mr. Texlee to Dr. Erenfeld was for professional services rendered by the doctor to Mr. Texlee. These services were rendered on a regular basis from year to year. This is sufficient to warrant the inference that the payments were made on the debt claimed. 51 Am. Jur.2d, Limitation of Actions, § 369.

The evidence also establishes that there were from two to eighteen charges made

per year for professional services rendered during the period subsequent to December 1958, and that in the years 1958, 1960, 1962, 1963, 1965, 1966, 1967 and 1968 a total of eleven partial payments were made on the whole account by Mr. Texlee. Only two of the eleven payments made were equal in amount to any of the specific charges. The total of all payments credited was considerably less than the total charges made during this period. There was an unpaid balance for the period subsequent to December 1958 of $6,261.00, which was allowed by the trial court. However, the record establishes, without question, that the continuing account had been running long before December 1958; that there was a change in the bookkeeping system in December 1958 when the balance from the older and abandoned bookkeeping system was carried over and posted to the new accounting system. The evidence also establishes that Mr. Texlee was billed monthly for the whole balance of the account and that it was upon this account that Mr. Texlee made the partial payments. In my opinion, the record establishes that Mr. Texlee acknowledged the continuing existence of a larger debt upon which he made partial payments.

It is, therefore, my further opinion that, under the evidence in this case, the account is a current open running account which has been in existence for approximately twenty-seven years, during which time Dr. Erenfeld rendered professional services to Mr. Texlee, and that the unpaid balance of this account, as of the date of the death of Mr. Texlee, was $19,040.40, which should be allowed as a current account. If, at any time, any portion of this indebtedness had become barred by the running of the six-year statute of limitations, the period, nevertheless, was started anew by the part payments which were made after the obligation had become barred, removing it from the statute and setting the statute running anew. 51 Am.Jur.2d, Limitation of Actions, § 363; 1 Am.Jur.2d, Accounts and Accounting, § 18; 54 C.J.S. Limitations of Actions § 321.

I also find that if I were to agree with the opinion of the majority as to the subject covered above, nevertheless, I would have to disagree with the method of computation by the majority in determining the allowable balance, the reason therefor being that there is absolutely no evidence of record to establish that Dr. Erenfeld applied the payments to the older charges. The record, to the contrary, shows that the payments were applied to the balance of the whole account as it existed at the time that each payment was made.

KNUDSON, J., concurs in the dissent of TEIGEN, J.