[File No. 7016.]

FRANK E. LEIFERT, Respondent, v. LULU PYRL WOLFER, Appellant.

(24 NW2d 690.)

Opinion filed October 26, 1946.

*J. A. Coffey* (John Knauf of counsel) for appellant.

*Rittgers & Hjellum* and *Nilles, Oehlert & Nilles,* for respondent.

Burr, J. This is an action to quiet title to real property. The issues are narrowed to the points outlined in the statement of facts.

On August 3, 1931, the defendant obtained a divorce from her husband and in the decree of divorce the court required him to pay certain household bills then due, attorneys' fees and costs (in all totaling $364), with child maintenance and alimony in the sum of $140 per month beginning August 4, 1931 "until the further order of the Court."

The decree provided:

"That . . . she have and is awarded judgment against defendant for said sums and debts as aforesaid, all in favor of the plaintiff and against the defendant and *such judgment is made a lien upon any and all properties of and belonging unto him and*

*any and all earnings and moneys and properties which he may hereafter attain or acquire; .. .. .."* (Italics ours)

The judgment of the court, docketed August 3, 1931 is final so far as the divorce is concerned; and in so far as it directs payment of the bills, attorneys' fees, costs, etc., and otherwise has not been modified.

Section 28–2013 of the Revised Code provides that: "a judgment which, in whole or in part, directs the payment of money" may be docketed and that:

"judgment shall be a lien on all the real property, except the homestead, of every person against whom any such judgment is rendered, which he may have in any county in which such judgment is docketed at the time of docketing or which he thereafter shall acquire in such county, for ten years from the time of docketing the same in the county in which it was rendered."

Defendant's judgment "in part" directed the payment of money.

The statutes of this state provide:

"When a divorce is granted, the court shall make such equitable distribution of the real and personal property of the parties as may seem just and proper, and may compel either of the parties to provide for the maintenance of the children of the marriage, and to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively. The court from time to time may modify its orders in these respects." § 14–0524, Rev Code.

"The court may require either party to give reasonable security for providing maintenance or making any payments required under the provisions of this chapter, and may enforce the same by appointment of a receiver or by any other remedy applicable to the case. . . ." § 14–0525, Rev Code.

This latter section provides further that the court may assign the homestead to the innocent party. Our statutes do not provide specifically that the court may make its judgment and decree for alimony, to be paid in the future in stated allowances and for an indefinite term and always subject to the power of the

court to revise, a perpetual lien upon the property of the husband. Authority therefor must come from some other source, if at all.

At the time of the divorce the husband was the owner of the real property described in this action. April 19, 1945, he deeded it to one Fode, and on June 15, 1945 Fode deeded it to the plaintiff, both deeds being recorded August 2, 1945.

In November of 1945 the clerk of the district court, without any authorization by the Court and with no other judgment entered, issued a special execution directed against this property. The sheriff levied upon the real property and sold the same to her for $8000 which she credited upon the amount which she claims was due her from her former husband. The sheriff issued a certificate of sale, and the sale was confirmed by the court, December 28, 1945.

On December 10, 1945, plaintiff commenced this action to determine adverse claims. His complaint is in the usual statutory form. The defendant answered, claiming a lien upon the property by virtue of the provision of the decree of divorce already quoted.

The plaintiff replied denying that any provision in this decree of divorce, "ever was or constituted any lien upon the premises described in the complaint, for the reason that the same was not a judgment for any specific sum of money but was a judgment only for divorce between said parties and requiring the defendant therein to pay monthly sums of money for the support of his family including plaintiff therein, and same was not docketed.

Plaintiff further alleges that the said divorce judgment was rendered and filed, but not docketed, in the office of the clerk of the court having jurisdiction thereof, on or about the 3rd day of August, 1931, and that no proceedings were ever thereafter or within 10 years from said date, taken or had and no affidavit was filed with the clerk of said court for the renewal of said judgment, and that at the time of the commencement of this action more than ten years, to-wit: fourteen years, had elapsed since the original filing of said judgment of divorce in the said action. And plaintiff denies all other allegations of said answer."

The trial court found for the plaintiff, holding that the defendant had no lien upon the property described and the defendant appeals from the judgment.

In State ex rel. Hagert v. Templeton, 18 ND 525, 123 NW 283, 25 LRA(NS) 234, we show that, "Jurisdiction in matters relating to divorce and alimony is conferred by statute, and the power of the courts to deal with such matters must find support in the statute, or it does not exist." We show therein the fundamental change between the ancient and more modern view with reference to matters pertaining to divorce and the authority of the courts in the matter of alimony. We show "The authority to grant such allowance (in that case alimony to the husband) if any such authority exists, must be by virtue of the Constitution or statutes of this state." We show this theory of "authority" had been the former holding of the court, citing Glynn v. Glynn, 8 ND 233, 77 NW 594, where appeal was made to the court to grant the wife alimony where divorce was granted because of her fault. We said "In the absence of statute, the rule is inexorable that no alimony can be allowed where a divorce is granted for the fault of the wife." We show the transition of jurisdiction in divorce matters from the conception of ancient times to that of modern. We quote with approval this comment from Cizek v. Cizek, 69 Neb 797, 96 NW 657, 99 NW 28, 5 Ann Cas 464: "Matters pertaining to divorce, separation, and alimony were originally of ecclesiastical cognizance; but in this country they have always been regulated by statute, and we think the courts have always looked to the statute as the source of their power." In this Templeton Case we approve this excerpt from Barker v. Dayton, 28 Wis 367:

"It is an undoubted general principle of the law of divorce in this country that the courts, either of law or equity, possess no powers except such as are conferred by statute; and that, to justify any act or proceeding in a case of divorce, whether it be such as pertains to the ground or cause of action itself, to the process, pleadings, or practice in it, or to the mode of enforcing the judgment or decree, authority therefor must be found in the

statute, and cannot be looked for elsewhere, or otherwise asserted or exercised." 18 ND 527.

In this Templeton Case we discuss the question of the general equity powers of the district court. The argument had been advanced that independent of statute the general equity powers of the court were such that because of "reciprocal duties upon the husband and wife for support and maintenance" the courts had general equity powers to deal with the relations between husband and wife. But we say:

"The fundamental error running through relator's entire argument is that the jurisdiction to grant divorces and to allow alimony and suit money is included within the general equity powers conferred upon the district courts, . . . Such argument, if addressed to the Legislature, would have much merit in its support."

We say further, "The Legislature, not the courts, have allowed the wife alimony in recognition of the husband's liability to support her, . . ."

Our statute provides that, "A lien is a charge imposed upon specific property by which it is made security for the performance of an act." § 35–0102, Rev Code. "A lien is created by contract of the parties or by operation of law. No lien arises by operation of law until the time at which the act to be secured thereby ought to be performed." § 35–0104, Rev Code.

In this divorce proceeding the parties arrived at and signed a financial settlement, prior to the trial of the case. The trial court determined this settlement was eminently fair and stated it was approved. The trial court, in the findings and order for judgment incorporated the terms in their entirety. No where in the settlement was there an agreement between the parties that the payments to be made by the husband were to be secured by lien upon his property. The agreement is silent in this respect. The court, while adopting the agreement in toto, added the provision thereto that the judgment which he rendered should be made a lien in its entirety upon all the property of the husband.

In Dickenson v. Sharpe, 94 Fla 25, 113 So 638, the court was

considering a decree of divorce wherein the wife had been granted permanent alimony of $50 per month. The court states,

"The question raised is whether or not a decree for permanent alimony when filed as required by law constitutes a lien on the real estate of the husband against whom such decree is rendered. It appears to be well settled that a decree granting permanent alimony does not become a specific lien on the husband's real estate unless so provided by statute."

The court shows the reason therefor as follows:

"A decree for permanent alimony is not one which may be paid off and discharged. It runs in installments so long as both parties are living unless vacated by order of court of competent jurisdiction. Therefore it is impossible to determine what amount of money will be required to meet the exigencies of the decree. It is clear that execution would not issue upon a decree like the one before the court at this time, and the only way by which an execution would be procurable would be for the claimant under the decree to petition the court for an adjudication against the person against whom the decree was rendered for default in payment of the installments and for an adjudication fixing the amount then due and payable under the terms of the decree and for an order for execution to issue for such specific amount."

It will be noted this decision in the Florida case was rendered in 1927 and the difficulty therein suggested was clearly set forth by this court several years before, thus:

"No one dealing with the defendant could, with any degree of accuracy, compute the amount of the payments which he would be required to make under the decree in this case. If the decree constituted a lien upon his real property for such monthly payments, then the effect would be to prevent defendant from dealing with his property at all, since he could not pay off the lien, except as each monthly instalment becomes due. Assuming, without deciding, that the court had power to provide that a decree for payment of monthly instalments of alimony should be a lien upon all real property owned or acquired by the judg-

ment debtor while liability for such payments continued, clearly the intention to so provide cannot be assumed, in the absence of express recital in the decree declaratory of such intent." Gray v. Gray, 44 ND 89, 94, 176 NW 7, 8.

In this Gray Case we showed the statute gave the court power to require the husband "to give security." We say, "We are entirely satisfied that under our laws a judgment for the payment of alimony in monthly instalments in no event becomes a lien upon the real property of the person required to make such payments unless the judgment expressly so provides." However, we do not hold that the court has power to create such a lien in the absence of statute, for, as noted in the quotation, we show merely that in that case involved there was no provision for a lien, leaving undetermined the power of the court to create a lien in absence of a statute to that effect or an adjudication of an amount due.

In the divorce proceeding under consideration here there was no determination of alimony in a lump sum and judgment rendered therefor. In a multitude of cases from various jurisdictions it is determined that where the court in a divorce proceeding enters judgment requiring the husband to pay a lump sum, a sum ascertained and determined in amount, such provision becomes a lien upon his property the same as any other judgment lien. It becomes a lien because of the judgment. It has the same scope and range of a lien on his property as any judgment lien has.

Our statute provides that the court may enforce the provisions for alimony "by appointment of a receiver" of the husband's property "or by any other remedy applicable to the case." This provision regarding remedy clearly contemplates any remedy provided by law. The seizure of the husband's property in order to require him "to give reasonable security—for the payments" stated is a remedy provided by law. To compel the giving of "reasonable security" by the husband, or punishment for contempt is a remedy provided by law. If the husband failed to give reasonable security, judgment could be rendered seizing

the property or putting it in the hands of a receiver; taking charge by some other statutory remedy provided by law; or transferring it to the wife. The statute does not contemplate that the court may create a remedy, and mortgage the property making the wife the mortgagee. There is a vast difference between compelling a transfer of title, or punishing the husband for not giving the reasonable security required or using any other statutory remedy, and creating a perpetual lien thereon when no such lien is prescribed by statute.

In Bailey v. Bailey, 53 ND 887, 207 NW 987, we had before us for consideration a divorce action wherein the parties to the divorce proceedings entered into a property settlement and "the court approved and adopted the property settlement made by the said parties and included the same in the findings of fact and conclusions of law and order for judgment, and upon the request and with the consent of both parties included the same in the final decree of divorce, that it was expressly understood and agreed by the said parties at the time of making the settlement, and of the findings of fact and conclusion of law order, for judgment, and the entry of decree and at all times since . . . that the plaintiff (the wife) had a lien upon the property hereinafter described under the terms of such settlement . . . and it was at all times understood and agreed by the said parties that the said lien should cover and be enforcible as against the said personal property, for the performance of all of the obligations and payments required to be made" by the husband. In this Bailey Case the question was raised "that the lien claimed is void because of lack of jurisdiction in the court to create the same . . . ." We held that the lien was valid because the property settlement itself made specific provision that the wife was to have a lien upon all of the property of her husband. "It was expressly understood and agreed between the said parties, as a part of the said property settlement, that the plaintiff (the wife) should have, and by the terms of said agreement was expressly given a first and prior lien upon property belonging to said parties, as security . . . ." The opinion shows that the

divorce was granted and the judgment entered upon this express agreement between parties to create a lien. This was in harmony with § 35–0104 of the Revised Code—a lien created by contract of the parties. This court merely enforced the contract. We show the lien was not created by the court. We say,

"The court could have given the homestead and certain personal property to the plaintiff, and certain personal property to the defendant and he could have required the defendant to give security for the payment of his divorce obligations, and if instead of making the decree a lien the defendant had given the plaintiff a chattel mortgage on the identical personal property described, the plaintiff would have a valid chattel mortgage on said property. The defendant agreed in open court that the court might include in the decree the provisions such as were included in the divorce proceedings, and the making of said lien with his consent is just as much his action and as binding upon him and the property as though he had given a chattel mortgage."

We state distinctly, "the lien is based upon the contract between the plaintiff and the defendant. It is their contract . . . ."

In the case at bar the parties did not agree that the wife was to have a lien upon the property. Such property settlement provision is absent in this case.

Some courts cling to the theory of the equitable powers of the court as does Virginia in Bray v. Landergren, 161 Va 699, 172 SE 252. This was a case where alimony was ordered payable in monthly installments and not for a lump sum and the court says, "Powers of courts of equity to decree alimony is inherent in them." But this inherent power has been repudiated by this jurisdiction. Undoubtedly the Virginia courts were governed by the union of ecclesiastical powers and statutory powers which prevailed in Virginia prior to Independence. The court traces the transition of the powers of the courts of chancery to courts of law.

"Divorce decree, requiring monthly payments by husband to

wife, is not lien on husband's property until passage of order determining amount due and authorizing execution, but may be enforced by execution or attachment as to all unpaid installments, due within preceding 12 years, on proper petition and order . . . ." Marshall v. Marshall, 164 Md 107, 163 A 874.

The question of an alimony award or a mutual agreement was also involved, but has no bearing here.

We have noted the distinction between a judgment for alimony in a fixed amount and one for an undetermined amount with stated payments until changed. In the former case there is a judgment for specific amount and this judgment is a lien upon real estate by statute independent of the court's action declaring it a lien. When there is no stated amount, but the decree requires monthly payments before any lien attaches there must be some judicial determination of the amount due. The Maryland case indicates that where past due payments have not been collected, these would outlaw in six years, but for payments due in the last six years the lien would attach as soon as the court would determine the amount due.

This quotation from Mansfield v. Hill, 56 Or 400, 107 P 471, 474, is illuminating.

"The provision of the divorce decree for future monthly payments by defendant until the further order of the court, being for an indefinite time and amount not yet accrued, is not a definite liability or a judgment for a specific sum which may become a lien upon his property. The very idea of a lien upon property involves certainty as to the amount so that persons dealing with defendant, as well as defendant himself, may know how much is involved; otherwise he would be precluded from dealing with his property at all, since it would be impossible for him to pay the lien. Freeman on Judgments, § 340, says: 'There can be no lien except upon such judgments as the plaintiff is entitled to satisfy by levy upon the lands of the debtor. . . . The judgment must be for a specified sum.' To the same effect is Black on Judgments, § 407."

In the divorce case under consideration here the payments

required to be made were not only for alimony but for the support of children. These two responsibilities of the husband and father are separate and distinct and are based on different principles, but so far as the provisions of the decree are concerned the payment is to the wife for an indefinite time and in amounts that are subject to change on notice. The duty to pay these however is a personal liability of the husband and father.

The lien, defendant claims, is based upon the provisions of the decree of divorce. The only lien the court could create is a judgment lien as created by statute, and no judgment was sought nor entered for unpaid installments of alimony. Under proper procedure it could have entered judgment for unpaid installments and thus have granted a judgment lien.

But the judgment as entered covered the $364 heretofore mentioned, and was a lien for that amount upon all real estate that he then owned or would own. Has it become void? Under our statute such judgment lien would not continue for more than ten years from the date of the docketing of the judgment, unless renewed.

A judgment is a lien for ten years and an action to enforce such judgment "must be commenced within ten years after the cause of action has accrued." (Rev Code, § 28–0115.) To perpetuate such judgment provision is made for renewal. Section 28–2021 of the Revised Code provides, "Any judgment which in whole or in parts directs the payment of money and which may be docketed in the office of the clerk of any district court in this state may be renewed. . . ." The statute then provides for the method of the renewal. In Lenhart v. Lynn, 50 ND 87, 194 NW 937, we hold specifically, "The lien of a judgment expires after ten years from the date of its docketing in the county where it was rendered." In Groth v. Ness, 65 ND 580, 260 NW 700, we hold, "A lien of a judgment is purely statutory and expires ten years from the date of its docketing in the county where it was rendered, unless renewed according to law." We hold further that, "In order to effect a renewal of a judgment lien there must be substantial compliance with the requirements of the statute."

This judgment was never renewed and therefore the lien of the judgment expired in 1941.

In her answer the defendant sets forth this claim under that judgment and the plaintiff in his reply specifically raises the defense of the statute of limitations.

In her answer the defendant not only sets forth a claim under the alleged continuing lien, but also claims an interest in the real estate involved because of the execution issued and the sale to her thereunder.

Though the defendant had a judgment against her husband for $364 and such judgment had become a lien upon his property, nevertheless the execution that was issued thereunder and the sale of the property under the terms of said execution and the subsequent confirmation of the sale by the court did not give the defendant any interest in the real property sold for the simple reason that the execution was not issued until after the judgment had become extinct and the proceedings thereunder could not validate this judgment.

However, the fact that the judgment lien against the husband's property no longer exists does not alter the relations between husband and wife so far as the alimony is concerned. The court has continuing jurisdiction in the divorce proceedings and may alter the provisions of the judgment regarding alimony. Thus the financial relations between the husband and wife are not determined in this proceeding. Her right to obtain a supplemental decree, her right to judgment against the husband for alimony accrued and unpaid are not involved here and are not considered.

The judgment appealed from is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and MORRIS, JJ., concur.