Jody MULLER, William A. Muller and Alvina L. Muller, Plaintiffs and Appellants,

v.

CUSTOM DISTRIBUTORS, INC., 7–11 Pool Products U.S., Inc., The Vinyl Works, Inc., Fort Wayne Pools, Inc., and 7–11 Pools and Metalfab, Ltd., Defendants and Appellees.

Civ. No. 910359.

Supreme Court of North Dakota.

May 26, 1992.

Kent A. Reierson, of Winkjer, McKennett, Stenehjem, Trotter & Reierson, Williston, for plaintiffs and appellants.

Al. Wahl, of Bjella, Neff, Rathert, Wahl & Eiken, PC, Williston, for defendant and appellee Custom Distributors, Inc.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for defendants and appellees 7–11 Pool Products U.S., Inc., and 7–11 Pools and Metalfab, Ltd. Appearance by Richard H. McGee II.

Pringle & Herigstad, PC, Minot, for defendant and appellee The Vinyl Works, Inc. Appearance by David J. Hogue.

VANDE WALLE, Justice.

Jody, William A., and Alvina L. Muller appealed from a summary judgment dismissing their action against Custom Distributors, Inc., 7–11 Pool Products U.S., Inc., The Vinyl Works, Inc., Fort Wayne Pools, Inc., and 7–11 Pools and Metalfab, Ltd. [hereinafter collectively referred to as the Defendants]. We affirm.

On March 1, 1980, Jody, a sixteen year old, was seriously injured when he dove into an indoor swimming pool at the home of Gerald and Vivian Illerbrun in Williston, North Dakota. On February 21, 1986, Jody, individually and by and through his parents, William and Alvina, as conservators, sued the Illerbruns, alleging that they negligently maintained and operated their swimming pool.

On June 20, 1989, the district court granted Jody's motion to amend his complaint to add a cause of action for damages and loss of consortium by William and Alvina and to name Associated Pool Builders, Inc., Custom Distributors, and 7–11 Pool Products U.S. as Defendants. On September 26, 1989, the court granted summary judgment dismissing the Mullers' action against Associated Pool Builders, a North Dakota corporation, on the ground that it was barred by the six-year statute of limitations under Section 28–01–16, N.D.C.C. On December 5, 1990, the court granted the Mullers' motion to add The Vinyl Works, Fort Wayne Pools, and 7–11 Pools and Metalfab as Defendants. The Mullers settled their action against the Illerbruns on March 11, 1991.

On July 1, 1991, the remaining Defendants, all nonresident corporations who were not registered as foreign corporations to transact business in North Dakota, moved for summary-judgment dismissal of

the Mullers' action on the ground that it was barred by the six-year statute of limitations in Section 28–01–16, N.D.C.C. Although at the time of the accident, Section 28–01–32, N.D.C.C.,[1] tolled the statute of limitations for out-of-state persons, the Defendants relied upon *Bendix Autolite Corp. v. Midwesco Enterprises*, 486 U.S. 888, 108 S.Ct. 2218, 100 L.Ed.2d 896 (1988), and contended that the tolling provisions violated the Commerce Clause of the United States Constitution.[2] The Mullers opposed the Defendants' motion, arguing that any determination that Section 28–01–32, N.D.C.C., was unconstitutional should be applied prospectively. The Defendants responded that a determination that Section 28–01–32, N.D.C.C., was unconstitutional should be applied retroactively to the Mullers' action. The district court concluded that the Mullers' action was barred by the statute of limitations, and granted the Defendants' motion for summary judgment. The Mullers appealed.

The district court's decision did not explicitly mention either the constitutional or the retroactivity issue. However, the parties extensively argued those issues to the district court, and the court concluded that the statute of limitations barred the Mullers' action. Although we encourage trial courts to explain the rationale for their decisions to facilitate public understanding and appellate review [*see Federal Land Bank of St. Paul v. Halverson*, 392 N.W.2d 77 (N.D.1986)], the issues argued before the district court and its ultimate decision dismissing the Mullers' action indicate that it effectively determined that Section 28–01–32, N.D.C.C., was unconstitutional and that its decision applied retroactively. We review the district court decision accordingly.

In *Bendix, supra*, the United States Supreme Court held that an Ohio tolling statute[3] similar to Section 28–01–32, N.D.C.C., violated the Commerce Clause. The Court said that a state regulation restricting interstate commerce in a manner not applicable to local business and trade may impose a burden that renders it invalid if, after weighing the state's interests against the restraint on interstate commerce, the burden on interstate commerce is unreasonable. Under that test, the Court concluded that requiring a foreign corporation to subject itself to the state's general jurisdiction by appointing an agent for service of process imposed a significant burden on interstate commerce which exceeded Ohio's interest in protecting its residents from corporations who leave the state after becoming liable for acts done in the state. The Court held that the tolling statute violated the Commerce Clause and affirmed the dismissal of the plaintiff's action on the ground that it was barred by the statute of limitations. The Court refused to consider the plaintiff's argument that the Court's decision should be applied prospectively,

**1.** At the time of the accident, Section 28–01–32, N.D.C.C., provided:

  "*Absence from state tolls limitations—Exception.* If any person shall be out of this state at the time a cause of action accrues against him, an action on such cause of action may be commenced in this state at any time within the term limited in this chapter for the bringing of an action on such cause of action after the return of such person into this state. If any person shall depart from and reside out of this state and remain continuously absent therefrom for the space of one year or more after a cause of action shall have accrued against him, the time of his absence shall not be taken as any part of the time limited for the commencement of an action on such cause of action. The provisions of this section, however, shall not apply to the foreclosure of real estate mortgages by action or otherwise."

**2.** U.S. Const., Art. I, § 8, provides, in part:

  "The Congress shall have Power ... To regulate Commerce ... among the several States, ..."

**3.** Ohio Rev.Code Ann. § 2305.15 provided:

  "When a cause of action accrues against a person, if he is out of the state, has absconded, or conceals himself, the period of limitation for the commencement of the action as provided in sections 2305.04 to 2305.14, 1302.-98, and 1304.29 of the Revised Code, does not begin to run until he comes into the state or while he is so absconded or concealed. After the cause of action accrues if he departs from the state, absconds, or conceals himself, the time of his absence or concealment shall not be computed as any part of a period within which the action must be brought."

because that issue was not raised in the lower courts.

■ Although the Mullers do not concede that Section 28–01–32, N.D.C.C., as it existed at the time of this accident,[4] was unconstitutional, they do not seriously argue about that issue and they "assume [that we] may find the statute to be an unconstitutional infringement on the commerce clause." Under the rationale of *Bendix,* we agree with their assumption. As in *Bendix,* our tolling statute imposed a significant burden on interstate commerce by requiring a foreign corporation to subject itself to the state's general jurisdiction in order to gain the protection of the statute of limitations. That burden exceeded the state's interest in protecting our residents from corporations who were out of this state when a claim for relief accrued against them. In accord with *Bendix,* we conclude that Section 28–01–32, N.D.C.C., violated the Commerce Clause. *See Juzwin v. Asbestos Corp., Ltd.,* 900 F.2d 686 (3rd Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 246, 112 L.Ed.2d 204 (1990) [1984 New Jersey tolling statute violated Commerce Clause]; *Abramson v. Brownstein,* 897 F.2d 389 (9th Cir.1990) [California tolling statute violated Commerce Clause]; *Coons v. American Honda Motor Co.,* 94 N.J. 307, 463 A.2d 921 (1983) [pre–1984 New Jersey tolling statute violated Commerce Clause].

■ The Mullers primarily argue for prospective application of *Bendix* and our decision under the three-pronged test enunciated in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), and followed by this Court in *Olson v.*

*Dillerud,* 226 N.W.2d 363 (N.D.1975). The Defendants respond that the *Chevron* test favors retroactive application.

Under the traditional Blackstonian Theory, a court's decision applied retroactively; however courts have retreated from that traditional rule, and under certain circumstances, now apply decisions prospectively. *Forster v. North Dakota Workers Compensation Bureau,* 447 N.W.2d 501 (N.D. 1989). In *Forster,* we observed that the retreat from the traditional rule of retroactivity culminated in *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

In *Sunburst,* 53 S.Ct. at 148–149, the United States Supreme Court held that the Montana Supreme Court had not denied a litigant federal due process when it prospectively applied its decision overruling the interpretation of a state statute:

> "We think the Federal Constitution has no voice upon the subject. A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions.... On the other hand, it may hold to the ancient dogma that the law declared by its courts had a Platonic or ideal existence before the act of declaration, in which event the discredited declaration will be viewed as if it had never been, and the reconsidered declaration as law from the beginning.... The choice for any state may be determined by the juristic philosophy of the judges of her

4. In 1989 the Legislature amended Section 28–01–32 by adding the clause that its provisions "do not apply if this state's courts have jurisdiction over a person during the person's absence."

Although the available legislative history provides no specific indication [see generally 1984 Legislative Materials Regarding H.B. 1078], that amendment apparently was in response to *Walsvik v. Brandel,* 298 N.W.2d 375 (N.D.1980), and *Loken v. Magrum,* 380 N.W.2d 336 (N.D.1986), in which we held that the availability of "long-arm" service of process under Rule 4, N.D.R.Civ.P., and under Sections 39–01–11 and 39–01–12, N.D.C.C., did not provide an excep-

tion for the tolling of the statute of limitations during the defendant's absence from the state.

Contrary to the Mullers' argument, our prior decisions in *Walsvik, Loken,* and *Berglund v. Gulsvig,* 448 N.W.2d 627 (N.D.1989), did not decide that Section 28–01–32, N.D.C.C., was constitutional. No constitutional argument was raised in those cases. We have repeatedly said that a party raising a constitutional challenge must bring up the heavy artillery or forego the attack entirely. *E.g., Effertz v. North Dakota Workers' Compensation Bureau,* 481 N.W.2d 218 (N.D.1992).

courts, their conceptions of law, its origin and nature."

But, in this case the tolling provisions of Section 28–01–32, N.D.C.C., violated the Commerce Clause of the federal constitution. In *Chevron Oil, supra,* the United States Supreme Court adopted the following factors for analyzing the prospectivity issue under federal law:

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that 'we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' ... Finally, we have weighed the inequity imposed by retroactive application, for '[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.' " *Chevron Oil Co., supra,* 404 U.S. at 106–107, 92 S.Ct. at 355. [Citations omitted.]

In *Olson v. Dillerud, supra,* we followed the *Chevron* factors and retroactively applied a prior decision declaring two state statutes unconstitutional under the equal protection clause of the federal and state constitutions. Since *Dillerud* we have specifically relied upon the *Chevron* factors [5] in analyzing issues about retroactivity and prospectivity. *Forster v. N.D. Workers Compensation Bureau,* 447 N.W.2d 501 (N.D.1989) [retroactive application of a decision that the due process clause of the federal and state constitutions required a pretermination hearing before workers compensation benefits may be terminated]; *First Interstate Bank of Fargo v. Larson,* 475 N.W.2d 538 (N.D.1991) [prospective application of a decision overruling a prior interpretation of state anti-deficiency judgment statutes]; *Service Oil, Inc. v. State,* 479 N.W.2d 815 (N.D.1992) [retroactive application of a decision determining that a reciprocity provision for motor vehicle fuel taxes violated the Commerce Clause].

However, the *Chevron* factors have been limited by the United States Supreme Court's recent decision in *James B. Beam Distilling Co. v. Georgia,* 501 U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991). In *Beam* the Court considered the issue of retroactive or prospective application of its prior decision in *Bacchus Imports, Ltd. v. Dias,* 468 U.S. 263, 104 S.Ct. 3049, 82 L.Ed.2d 200 (1984). In *Bacchus,* the Court held that Hawaii's discriminatory tax on alcohol violated the Commerce Clause. In *Beam* the Court considered Georgia's similar discriminatory tax on alcohol. Although there was no majority opinion in *Beam,* six justices ultimately concluded that the Court's decision in *Bacchus* about the Hawaii taxes applied retroactively to *Beam* and the Georgia taxes.

Justice Souter, joined by Justice Stevens, said that the question of retroactive or prospective application of a law changing judicial decision is a federal choice of law question where the judicial decision involves federal law, constitutional or other-

---

5. Although we have also recognized and utilized both the retroactive and prospective application of judicial decisions in cases in which we did not specifically cite the *Chevron* factors, those decisions have relied upon similar factors. *Metropolitan Life Ins. Co. v. Commissioner of Dept. of Ins.,* 373 N.W.2d 399 (N.D.1985) [equities of case required prospective application of decision that gross premium tax on foreign insurers was unconstitutional]; *State v. Nagel,* 308 N.W.2d 539 (N.D.1981) [purpose of rule, reliance interests, and burden on administration of justice did not favor retroactive application of *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) ]; *Soo Line Ry. Co. v. State,* 286 N.W.2d 459 (N.D.1979) [hardship required prospective application of decision forbidding use of a higher percentage of assessed value for centrally assessed property than for locally assessed property]; *Walker v. Omdahl,* 242 N.W.2d 649 (N.D.1976) [reliance required prospective application of decision that statute violated state constitution]. *See also Kitto v. Minot Park District,* 224 N.W.2d 795 (N.D.1974) [prospective application of decision abolishing governmental immunity]; *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974) [prospective application of decision holding guest statute unconstitutional].

wise. Justice Souter outlined three resolutions to the choice of law problem. First, a law changing decision may be made fully retroactive to the parties before the court and to all other parties whose claims are not barred by res judicata or procedural barriers such as statutes of limitations. Second, a decision may be applied purely prospectively and not to the parties to the decision, nor to conduct or events occurring before that decision. Third, a decision may be given selective prospectivity and applied to the case in which it is pronounced, but not to cases arising on facts predating the decision.

Justice Souter said that *Beam* involved selective prospectivity and recognized that the liquor distributors in *Beam* had not challenged the Georgia law until after the Hawaii law was declared unconstitutional in *Bacchus.* Nevertheless, Justice Souter concluded that principles of equality and stare decisis prevailed over any equity claim based on the *Chevron* analysis because "when the Court has applied a rule of [federal] law to the litigants in one case [as it did in *Bacchus* ] it must do so with respect to all others not barred by procedural requirements or res judicata." *Beam, supra,* 501 U.S. at ──, 111 S.Ct. at 2448, 115 L.Ed.2d at 493. Justice Souter acknowledged the narrow grounds for the decision and declined to speculate as to the bounds, or propriety, of pure prospectivity.

Justice White concurred in the judgment, specifically citing *Chevron* and stating that, in certain cases, he would not reject the doctrine of pure prospectivity. Justices Scalia, Marshall, and Blackmun also concurred in the judgment, stating that both selective prospectivity and pure prospectivity were beyond the power of the Court.

Justice O'Connor, joined by Justice Rehnquist and Kennedy, dissented and concluded that *Bacchus* applied prospectively under the *Chevron* analysis.

Thus, in *Beam* six justices agreed with the result that if a new federal constitutional rule is applied to the litigants in the case in which the rule is announced, the rule applies retroactively to cases that are not barred by procedural requirements or res judicata.[6] *See Cambridge State Bank v. James,* 480 N.W.2d 647 (Minn.1992) [where the Supreme Court has applied a rule of federal law to the litigants in the law changing case, *Beam* requires retroactive application of that law to other cases not barred by procedural requirements or res judicata].

In *Bendix* the Court held that Ohio's tolling statute violated the federal constitution. The Court rejected the plaintiff's request for prospective application because that argument was not raised in the lower courts. The *Bendix* court thus applied its decision to the parties in that case and affirmed the dismissal. of the plaintiff's lawsuit on the ground that it was barred by the statute of limitations. Although we have only now, in this opinion, declared Section 28–01–32, N.D.C.C., unconstitutional, under *Beam* the choice of law issue is governed by the federal rule announced in *Bendix*[7] and that decision applies retroactively to the Mullers's action.

This case does not require a different result because it involves a statute of limitations. In *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. ──, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), decided the same day as *Beam,* the Court interpreted the federal statute of

---

**6.** We also observe that a different majority, Justices Souter, Stevens, White, O'Connor, Rehnquist, and Kennedy, did not rule out the doctrine of pure prospectivity and the *Chevron* .analysis in appropriate cases. *See Sterling v. Block,* 953 F.2d 198 (5th Cir.1992) [*Chevron* analysis is still applicable to the initial determination of whether a new federal rule should be applied prospectively but it is error to apply that analysis if the new federal rule was retroactively applied to the parties in the case in which it was originally announced]. *See also The Su-*

*preme Court—Leading Cases,* 105 Harv.L.Rev. 177 (1991).

**7.** *Beam* was limited to decisions changing federal law. Under *Sunburst,* state courts are not precluded from using the *Chevron* factors in decisions changing state law such as *First Interstate Bank of Fargo v. Larson,* 475 N.W.2d 538 (N.D.1991). *See Martin Marietta Corp. v. Lorenz,* 823 P.2d 100 (Colo.1992) [Retroactive application of state judicial decision announcing a new rule of tort law governed by *Chevron* analysis].

limitations for private claims under Section 10(b) of the Securities and Exchange Act of 1934 [15 U.S.C.S. § 78j(b)] and Securities and Exchange Commission Rule 10b-5 [17 C.F.R. § 240.10b-5] in a manner that effectively announced a new rule of law. Despite a dissent written by Justice O'Connor and joined by Justice Kennedy which concluded that the *Chevron* factors favored prospective application of the Court's decision, the majority concluded that the plaintiffs' actions were barred by the statute of limitations announced in that case and did not specifically discuss the retroactivity or prospectivity issue. The Court thus applied its decision on a statute of limitations issue to the parties to the lawsuit. *See Lufkin v. McCallum*, 956 F.2d 1104 (11th Cir.1992). *See also* Robert W. Ginn, *United ed States Supreme Court Changes in Determining Whether Judicial Decisions Should Apply Retroactively*, 25 Creighton L.Rev. 29 (1991); *The Supreme Court— Leading Cases*, 105 Harv.L.Rev. 177 (1991).

We conclude that under *Beam*, the Supreme Court's decision in *Bendix* and our decision in this case apply retroactively to the Mullers' lawsuit.[8] Accordingly, we affirm the summary judgment dismissing the Mullers' action.

ERICKSTAD, C.J., LEVINE, J., MAURICE HUNKE, District Judge, and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting in place of MESCHKE, J., disqualified.

MAURICE HUNKE, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON, not being a member of this Court at the time this case was heard, did not participate in this decision.

---

**8.** Because of our resolution of this issue, we need not analyze this case under the *Chevron* factors. However, we believe the result is the same under those factors. *See Service Oil, Inc. v. State*, 479 N.W.2d 815 (N.D.1992).